O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SST RECORDS, INC., a Texas corporation; GREGORY R. GINN, an individual,<br><br>        Plaintiffs,<br><br>   v.<br><br>HENRY GARFIELD aka HENRY ROLLINS, an individual; KEITH MORRIS, an individual; GARY McDANIEL aka CHUCK DUKOWSKI, an individual; DENNIS PAUL CADENA aka DEZ CADENA, an individual; JOHN WILLIAM STEVENSON aka BILL STEVENSON, an individual; and STEPHEN PATRICK O'REILLY aka STEPHEN EGERTON, an individual,<br><br>        Defendants. | Case No. CV 13-05579 DDP (MANx)<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Dkt. No. 17] |

    Presently before the court is Plaintiffs SST Records, Inc. ("SST") and Gregory Ginn's Motion for a Preliminary Injunction. Having considered the submissions of the parties and heard oral argument, the court denies the motion and adopts the following order.

**I.   Background**

In 1976, Plaintiff Gregory Ginn ("Ginn") and Defendant Keith Morris formed a band, which Defendant Gary McDaniel (also known as Chuck Dukowski) later joined.  (Declaration of Gregory Ginn, ¶ 4.)  In 1978, the band changed its name to "Black Flag," and played its first paid show under that name in January 1979.  (Id. ¶ 5; Declaration of Chuck Dukowski ¶ 3.)  Between 1979 and 1986, several people joined and/or left Black Flag, including Defendants Dennis Cadena, Stevenson, and Garfield (also known as Henry Rollins).

The parties dispute their various roles in the band.  For at least some period of time, the band considered itself to be a statutory partnership, making decisions by majority, distributing earnings evenly, and submitting tax filings as the "Black Flag Partnership."[1]  (Dukowski Decl. ¶ 4; Ex. A.)  Plaintiff SST, of which Plaintiff Ginn is the sole remaining shareholder, released and distributed all of Black Flag's eighteen albums.  (Ginn Decl. ¶ 7.)

Black Flag also adopted a logo, consisting of four uneven black bars simulating a waving flag ("the Logo"), that ultimately became very well-known.  (Ginn Decl. ¶ 8.)  SST manufactures and distributes clothing bearing the Logo.  (Id. ¶ 9.)  Several third parties with no relationship to either Black Flag, SST, or any of the parties to this suit also make use of the Logo on clothing and promotional materials and in various other ways.  (Dukowski Decl. ¶ 16; Ex. D.)

---

[1] At other times, Dukowski listed Black Flag as his sole proprietorship, allegedly at Ginn's request.  (Dukowski Decl. ¶ 5.)

     By 1986, Plaintiff Ginn and Defendant Rollins were the only parties remaining in Black Flag. The parties dispute whether Ginn or Rollins was the last member of the band. (Ginn Decl. ¶ 6; Rollins Decl. ¶ 5.) In any event, the band broke up, and no party performed under the Black Flag name for almost twenty years until, in 2003, certain former members of Black Flag, including Plaintiff Ginn and Defendant Cadena, played three reunion shows in Southern California. (Ginn Decl. ¶ 11.)

     Almost a decade later, in December 2011, Defendants Stevenson, Morris, Dukowski, and Egerton (who had not been a member of Black Flag) performed a single show as Black Flag. (Dukowski Decl. ¶ 21.) In July 2012, Dukowski and other Defendants came to a decision to play shows as "Flag," which they envisioned as a "Black Flag tribute band." (Id. ¶¶ 22-23.) Flag includes all defendants, with the exception of Rollins. (Id. ¶ 27.)

     In September 2012, after the December 2011 Black Flag show but before Flag began performing, Defendants Morris and Rollins filed trademark applications for the name Black Flag and for the Logo. (Morris Decl. ¶ 5.) Morris and Rollins intended to register the marks on behalf of the Black Flag Partnership. (Id.; Rollins Decl. ¶ 7.) Ginn asserts that Morris and Rollins lied in their trademark application by submitting material belong to SST as their own and by falsely claiming that they had continuously used the Black Flag name and Logo on merchandise and in live performances. (Ginn Decl. ¶¶ 14-16.) It does not appear that the Patent and Trademark Office has yet acted upon the application.

     In January 2013, Flag publicly announced that it would begin touring. (Dukowski Decl. ¶ 25.) Flag's promotional materials

feature the band name, and the language "Featuring Original Members Keith Morris, Chuck Dukowski, Bill Stevenson, and Dez Cadena, with Stephen Egerton, Performing the Music of Black Flag." (Ginn Decl. Ex. G.) The materials also include a logo comprised of four evenly spaced black bars in a straight line (as opposed to the Logo's offset bars). (Id.) Flag played its first show in April 2013, and is scheduled to finish its 2013 tour on November 8, 2013.[2] (Id.) In February 2013, two weeks after Flag announced its tour dates, Ginn announced that he would be touring as Black Flag. (Dukowski Decl. ¶ 25.) Black Flag toured in the United States through September 2013. (Barraza Decl. ¶ 8.)

On August 2, 2013, Ginn and SST filed this suit for trademark infringement, unfair competition, and breach of contract. Plaintiffs now seek a preliminary injunction enjoining all Defendants from using the name Black Flag or the Logo.

**II. Legal Standard**

Typically, a private party seeking a preliminary injunction must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. Winter v. Natural Res. Defense Counsel, 555 U.S. 7, 20 (2008). Preliminary relief may be warranted where a party (1) shows a

---

[2] Plaintiffs submit the Declaration of Jose Barraza in support of their assertion that Flag sells Black Flag merchandise at Flag shows. The quality of the picture is so poor, however, that it is difficult to tell whether the design on the shirt is the Logo or the straight-line bars, as well as whether the photo depicts, as Plaintiffs claim, a Flag merchandise table at a Flag show or a bookcase of some sort.

4

1  combination of probable success on the merits and the possibility
2  of irreparable harm, or (2) raises serious questions and the
3  balance of hardships tips in favor of an injunction. See Arcamuzi
4  v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987).
5  "These two formulations represent two points on a sliding scale in
6  which the required degree of irreparable harm increases as the
7  probability of success decreases." Id. Under both formulations,
8  the party must demonstrate a "fair chance of success on the merits"
9  and a "significant threat of irreparable injury."[3] Id.

**III. Discussion**

To prevail on a trademark claim, a plaintiff must show that it has some protectable interest in the mark. Apllied Info. Sciences Corp. v. eBAY, Inc., 511 F.3d 966, 696 (9th Cir. 2007). Beyond ownership, the "core element" of a trademark infringement claim is the likelihood that the similarity of the marks will confuse consumers as to the source of goods or services. Freecycle Network, Inc. v. Oey, 505 F.3d 898, 902 (9th Cir. 2007). Relevant factors include the strength of the mark, proximity of the goods, similarity of the marks, evidence of actual confusion, marketing channels used, degree of care likely to be exercised by consumers, defendant's intent, and likelihood of expansion of product lines. AMF Inc. v. Sleekcraft Boats, 599 F.2d 941, 348-49 (9th Cir. 1979).

Plaintiffs have not shown a sufficient likelihood of success on the merits to warrant preliminary injunctive relief. As an

---

[3] Even under the "serious interests" sliding scale test, a plaintiff must satisfy the four Winter factors and demonstrate "that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

5

1  initial matter, even putting aside the question whether either
2  Plaintiff owns either of the marks, the court is not persuaded that
3  Plaintiffs can demonstrate a protectable interest in either the
4  Black Flag name or the Logo, neither of which are registered to
5  either Plaintiff.  Plaintiffs assert that both marks are extremely
6  well known, but at some point, marks may "transcend their
7  identifying purpose" and fall outside the protection of trademark
8  law.  Mattel, Inc. v. MCA Records, Inc., 296 F.3d 894, 900 (9th
9  Cir. 2002).  "Such genericide can occur as a result of a trademark
10 owner's failure to police the park, resulting in widespread usage
11 by competitors leading to a perception of genericness among the
12 public, who sees many sellers using the same term." Freecycle, 505
13 F.3d at 905.  Defendants have submitted evidence suggesting that
14 even if Plaintiffs own the marks, they have allowed them to fall
15 into generic use.  Several manufacturers, for example, appear to
16 have been distributing unlicensed merchandise featuring the Logo
17 since at least 2009, without any action from Plaintiffs.  Indeed, a
18 Japanese company's registration of the Black Flag mark in 2008
19 elicited no response from Plaintiffs.  (Dukowski Decl., Ex. J.)
20 Nor, in the years following the band's dispersal in 1986, did
21 Plaintiffs take any action to maintain the distinctiveness of the
22 marks.  See Freecycle, 505 F.3d at 906.  It is, therefore, doubtful
23 whether Plaintiffs can establish that the marks are protectable.
24      Even if Plaintiffs could establish a protectable interest in
25 the marks, they have not adequately demonstrated that the marks and
26 Flag's marks are particularly similar.  "Similarity of the marks is
27 tested on three levels: sight, sound, and meaning.  Each must be
28 considered as they are encountered in the marketplace." Network

6

Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1150 (9th Cir. 2011) (quoting Sleekcraft, 599 F.2d at 354 (internal quotation marks omitted)). "The more similar the marks . . ., the greater the likelihood of confusion." Id. Plaintiffs provide four examples of Flag promotional posters or flyers that a consumer might encounter in the marketplace. (Ginn Decl., Ex. G.) Each of these examples includes, immediately adjacent to the name Flag and the evenly spaced black bars, the explanatory, and undisputedly accurate, language, "Featuring Original Members Keith Morris, Chuck Dukowski, Bill Stevenson, and Dez Cadena, with Stephen Egerton, Performing the Music of Black Flag." While the black bars and word "Flag" bear some visual similarity to Plaintiff's alleged marks, the inclusion of explanatory language clearly distinguishes the marks visually and aurally, and even more so in meaning. So encountered, Flag's marks are not very similar to Plaintiff's alleged marks, and it appears unlikely that consumers will confuse them.

   As to the intent factor, given Plaintiffs' dissociation from the marks for the better part of three decades, Plaintiffs' argument that defendants' selection of the Flag marks was in bad faith is not persuasive. Aside from three shows in 2003, Ginn did not claim any connection to the Black Flag and Logo marks until after Flag announced its tour plans in 2013. Even if it is ultimately determined that SST owns the marks, Defendants have presented at least a colorable argument, and certainly some evidence of a good faith belief, that they, through some iteration of a partnership, own or owned the marks. See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025,

1043 (9th Cir. 2010) (The issue in the intent factor is "whether defendant in adopting its mark intended to capitalize on <u>plaintiff's</u> good will." (quotation and citation omitted) (emphasis added).[4]

Lastly, though evidence of actual confusion is not necessary to a finding of likelihood of confusion, evidence of "actual confusion among significant numbers of consumers provides strong support for the likelihood of confusion." <u>Playboy Enters., Inc. v. Netscape Comms. Corp.</u>, 354 F.3d 1020, 1026 (9th Cir. 2004). Here, Plaintiffs' only evidence of actual confusion is Ginn's declaration that, at one of his shows, fans asked him if he would be at an upcoming Flag show. (Ginn Decl. ¶ 20.) Such limited evidence hardly establishes actual confusion among a significant number of consumers. Furthermore, Defendants point to extensive media coverage of this dispute, highlighting the differences between the two bands and, thus, decreasing the likelihood of consumer confusion.

The similarity, intent, and actual confusion factors weigh heavily against a finding of likelihood of confusion. Though Plaintiffs may ultimately be able to establish such a likelihood,

---

[4] For these same reasons, Plaintiffs have not shown a likelihood that they will succeed on their trademark cancellation claim. <u>See</u> <u>Robi v. Five Platters, Inc.</u>, 918 F.2d 1439, 1444 (9th Cir. 1990) ("A party may seek cancellation of a registered trademark on the basis of fraud under 15 U.S.C. § 1064(c) by proving a false representation regarding a material fact, <u>the registrant's knowledge or belief that the representation is false</u>, the intent to induce reliance upon the misrepresentation and reasonable reliance thereon, and damages proximately resulting from the reliance." (emphasis added)). Furthermore, it does not appear that the registration has issued.

at this stage, they have failed to demonstrate a likelihood of success on the merits sufficient to warrant injunctive relief.

**IV. Conclusion**

For the reasons stated above, Plaintiffs' Motion for Preliminary Injunction is DENIED.

IT IS SO ORDERED.

Dated: October 8, 2013

DEAN D. PREGERSON
United States District Judge

9